STATE v. REBECCA LYON.

*Witness—Accomplice, rights of—Executive Clemency—Nol. Pros.*

The fact that an accomplice is introduced as a witness and testifies to such facts as are within his knowledge, withholding nothing because of its tendency to self-crimination, does not constitute a legal defence to a prosecution against him. He has an equitable claim to executive clemency, or the solicitor may enter a *nolle prosequi*.

PETITION for a *Certiorari* filed by the prisoner and granted at June Term, 1879, of THE SUPREME COURT.

The facts upon which the motion for the discharge of prisoner is based are sufficiently stated by THE CHIEF JUSTICE in delivering the opinion of this court.

*Attorney General*, for the State.
*Messrs. Thos. Ruffin* and *J. W. Graham*, for prisoner.

SMITH, C. J. The prisoner Rebecca Ann Lyon was examined in the summer of 1877 as a witness upon an inquisition of the coroner's jury into the causes of the death of Nannie Blackwell, and on behalf of the state, before two successive grand juries in Orange superior court, on bills of indictment charging Robert Boswell with the murder of the deceased, and again upon his trial at fall term, 1878, before the petty jury by whose verdict he was convicted. At the same term the prisoner herself was indicted for the same crime, as an accomplice, mainly upon the testimony of Robert Boswell, and at spring term, 1879, another bill was found against the prisoner in which she is charged with the murder of one Ned Lyon. The record does not show, nor is it suggested that the testimony was obtained upon any assurances of leniency or favor to be extended to the prisoner or that it was not voluntarily given in. After the

verdict was rendered against Boswell, the solicitor proposed to put the prisoner on trial for complicity in the same crime, which her counsel resisted, insisting that by reason of her having been used as a witness on these several occasions, and the materiality of her testimony, she was equitably entitled to be discharged from this prosecution and asked the court so to rule. In answer thereto the court made an order, so much of which as is necessary to a proper understanding of the case is as follows: "It further appearing to the court here that the present indictment against the accused charges her with the murder of Nannie Blackwell, of which said offence one Robert Boswell hath been tried at this term, and against whom this accused, Rebecca Ann Lyon, was used and examined as a witness on behalf of the state, it is declared by the court here that it is not just and right that the accused be tried for the crime whereof she now stands indicted, and it is therefore ordered that the said Rebecca Ann Lyon be not put to answer the present indictment and to say whether she be guilty or not guilty of the felony and murder whereof she stands charged."

Upon the announcement of the decision the solicitor remarked that he had other charges against the prisoner and was awaiting the results of an analysis of the contents of the stomach of Ned Lyon, and thereupon the prisoner was remanded to the custody of the sheriff.

At spring term, 1879, the solicitor proposed again to arraign and try the prisoner for the murder of Nannie Blackwell, and on the renewal of the motion of her counsel for an order of discharge, he stated that it was not his intention at the present term to bring on the trial of the charge for the murder of Ned Lyon, if the prisoner was entitled to be discharged from the other indictment. The court refused the motion for the prisoner, but continued the case that she might have time to apply for such relief as her counsel should advise.

STATE *v.* LYON.

This is a summary of the material facts contained in the application for the *certiorari* and in the record sent up in obedience to the writ, and they do not call for or authorize any interference by this court in the proceedings depending in the superior court below. It is plain they constitute no legal defence against the prosecution, or if they did, they could be put in proper form and made available at the trial. The prisoner's evidence was not elicited upon any promise or expectation, aside from that produced by the act of examination, of release or other individual advantage to the witness to be derived therefrom; and if such assurance had been given, its only effect would be to influence the solicitor to enter a *nolle prosequi* under a proper sense of official duty, which the court might affirm, but would not undertake to control. The pardoning power after conviction is vested alone in the governor, and the court can do no more than to forbear and give opportunity to the prisoner to make application to him with a recommendation for its favorable exercise. This is the practice deduced from an examination of the cases in which judicial action has been invoked. The subject is discussed in one of the series of cases lately determined in the supreme court of the United States (*United States* v. *Ford and others*, not yet reported) tracing the rule of practice from its origin through successive precedents down, and we are content to reproduce some of the authorities cited and views expressed in the very elaborate opinion of the court as delivered by Mr. Justice CLIFFORD: " In the present practice, says Mr. Starkie, when accomplices make a full and fair confession of the whole truth, and are in consequence admitted to give evidence for the crown, if they afterwards give their testimony fairly and openly, although they are not entitled of right to a pardon, the usage, lenity, and practice of the court are to stay the prosecution against them, and they have an equitable title to a recommendation to the king's mercy." 2 Stark. Ev., 15.

" They cannot plead this in bar to an indictment against them, nor can they avail themselves of it as a defence on their trial, though it may be made the ground of a motion for putting off the trial in order to give the prisoner time to present an application for executive clemency." Ros. Cr. Ev., 597. " Interviews for the purpose mentioned" (between the prosecuting officer and the accomplice proposing to testify, to ascertain the value and materiality of the evidence) " are for mutual explanation, and do not commit either party, but if the accomplice is subsequently called and examined, he is equally entitled to a recommendation for executive clemency. Promise of pardon is never given in such an interview, nor any inducement held out beyond what the before mentioned usage and practice of the courts allow."

The difficulty of giving specific effect to the usage from a want of power in the executive (as in this state) to pardon until after trial and conviction may be removed by the exercise of the right vested in the solicitor, when in his judgment the case calls for it, to enter a *nolle prosequi* and allow the prisoner's discharge, which practically accomplishes the same ends as the pardon.

The opinion refers to a suggestion of Mr. Bishop that the prisoner may be permitted to plead guilty, under an arrangement with the prosecuting officer that he may "retract his plea and plead one to the merits, if his application for a pardon shall be unsuccessful." 1 Bish. Cr. Proc., § 1006, note. The suggestion does not commend itself to our approval. If the record discloses the entire transaction, the application could not be entertained, since there has been no such conviction as the constitution contemplates; and if the supposed outside arrangement is withheld, it is an attempted evasion of a plain provision of law and makes the record present an incomplete and untruthful statement of the facts. To this no judicial tribunal should be a party.

In such case the power to relieve and the responsibility for its exercise must remain in the sound discretion of the prosecuting officer, where the law places them.

In the quotation from Starkie it is said the witnesses " must give their testimony *fairly and openly*," and the opinion of the court speaks of the equitable claim of the witness as depending " upon the condition that he makes a *full and fair disclosure of the guilt of himself and that of his associates.*" If it be meant by these expressions that the witness must disclose what he knows and withhold nothing because of its tendency to self-crimination, the qualification is wise and proper. But if it be intended to say that the testimony must be full and fair, and of this the court to be the judge, the restriction does not meet our concurrence. It is sufficient if the witness testifies to such facts as are within his knowledge and refuses no material and admissible information which he possesses, whether the evidence be favorable or adverse to the state, to entitle him to the recommendation to executive clemency, since it is the introduction and examination of the witness upon the incriminating facts of the *corpus delicti* that form the basis of his claim, and not the character and effect of the testimony delivered. Any further qualification tends to intensify an eagerness to convict and weakens confidence in the truthfulness of the evidence.

What has been said applies exclusively to the one prosecution for the murder of Nannie Blackwell. With another indictment pending for a similar crime, while the prisoner is entitled to a speedy trial according to the course of the court, she cannot ask for a discharge. Nor in our opinion is the case affected by the order of fall term, 1878. It was not warranted for the reasons assigned, and its operation was suspended if not neutralized by the suggestion of the solicitor that there was another charge depending against the prisoner. The application to us for a discharge must

be refused and the cause be left in the superior court to be proceeded with according to law.

PER CURIAM.                                    Motion refused.