Syllabus.

---

## JOSEPH NOWACRYK

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa October 31, 1891.*

1. MURDER—*provocation the day before—will not excuse or reduce to manslaughter.* No provocation, however great, offered the day before the commission of the homicide, can be shown in justification or excuse, nor can it have a tendency to reduce the offense from murder to manslaughter, for the reason that there is time sufficient between the provocation and the killing for the voice of reason to be heard, and for deliberation.

2. SAME—*manslaughter distinguished.* Before a homicide can be accounted manslaughter, the killing must be the result of that sudden, violent impulse of passion supposed to be irresistible. If it appears that there was an interval between the provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing must be attributed to deliberate revenge, and punished as murder.

3. SAME—*degrees in punishment—evidence to determine proper punishment.* While the statute recognizes no degrees in the crime of murder, yet by providing such a wide range of punishment it clearly recognizes the fact that the crime may be committed under circumstances manifesting different degrees of turpitude. The design of the statute is that the punishment shall be proportioned to the turpitude of the offense, and hence evidence having a direct and legitimate bearing upon that question should be allowed to go to the jury, so as to enable them to fix the punishment understandingly and justly.

4. On a trial of one for murder, evidence that the day before the homicide the father of the deceased was in persistent pursuit of the defendant, armed with a deadly weapon, seeking to take his life, and after failing to find the prisoner still threatened to kill him on sight, it appearing that the latter became cognizant of such threat, and in seeking to take the life of the father killed the daughter, is admissible on the question of the degree of punishment to be awarded the defendant.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

. Mr. William Mooney, for the plaintiff in error:

On the cross-examination of Anton Sokolovski, the prosecuting witness, the court unduly restricted the examination. *Birr* v. *People,* 113 Ill. 645; *Tracy* v. *People,* 97 id. 101.

Great latitude should always be allowed in the cross-examination of a witness, especially in a capital case. *Ritzman* v. *People,* 110 Ill. 363.

When there is evidence tending to show that there had been a difficulty between the defendant and the prosecuting witness, there should be no abridgment of cross-examination, but rather an extension of it. *Birr* v. *People,* 113 Ill. 645; *Wilson* v. *Genseal,* id. 403.

Any fact or circumstance which would mitigate the turpitude of the crime, and tend to lessen the punishment, is competent evidence. *Farris* v. *People,* 129 Ill. 533; *Fletcher* v. *People,* 117 id. 188.

Mr. George Hunt, Attorney General, and Mr. Edward C. Aiken, State's Attorney, for the People:

If a question is put to a witness, which is collateral or irrelevant to the issue, his answer can not be contradicted. Greenleaf on Evidence, sec. 449.

Evidence offered by the defense, on an indictment for murder, to the effect that the deceased, prior to the homicide, threatened the defendant's life, is inadmissible, unless proof be first given that there was an overt act of attack, and that defendant, at the time of the collison, was in apparent imminent danger. *Turpin* v. *State,* 55 Md. 462.

In capital cases, past threats and hostile actions, or antecedent circumstances tending to show malice on the part of the deceased, are admissible, in connection with the homicide, for the purpose of showing apprehension of personal danger from the deceased, and of illustrating the question which of the parties, in a sudden quarrel in which human life has been taken, may have been the assailant, but not otherwise. *People*

v. *Travis*, 56 Cal. 251; *Russell* v. *State*, 11 Tex. App. 288; *People* v. *Franklin*, 62 Tex. 463; *People* v. *Westlake*, 62 Cal. 303; *Green* v. *State*, 69 Ala. 6.

Evidence was offered by the defendant to show the uttering of threats by the murdered man against the defendant two days prior to the perpetration of the crime. It was, however, neither averred nor proven that the threats had been communicated to defendant: *Held*, that the threats were not part of the *res gestæ*, nor relevant to the point at issue, and that therefore the evidence was properly excluded. *Nevling* v. *Commonwealth*, 98 Pa. St. 322.

Uncommunicated threats are not admissible in a trial for murder. *Combs* v. *State*, 75 Ind. 215; *Rogers* v. *State*, 62 Ala. 170; *Wiggins* v. *People*, 3 Otto, 465; *People* v. *Iams*, 57 Cal. 118; *Thomas* v. *State*, 11 Tex. App. 315.

The doctrine announced in the foregoing decisions has been repeatedly affirmed by this court. *Perteet* v. *People*, 70 Ill. 172; *Sorgenfrei* v. *Schroeder*, 75 id. 397; *Cummins* v. *Crawford*, 88 id. 312; *Wilson* v. *People*, 94 id. 299; *Forbes* v. *Snyder*, id. 374; *Leigh* v. *People*, 113 id. 372; *Gilmore* v. *People*, 124 id. 380.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

At the May term, 1890, of the Circuit Court of Will county, Joseph Nowacryk was indicted by the grand jury for the murder of Stasia Sokolovski. A trial of the defendant upon said indictment was had at the September term, 1890, of said court, resulting in a verdict finding him guilty in manner and form as charged, and imposing the death penalty. A motion by the defendant for a new trial, and also a motion in arrest of judgment, being overruled, sentence was pronounced upon him in accordance with the verdict, and he now brings the record to this court by writ of error, which has been made a *supersedeas*.

Stasia Sokolovski, a girl about fifteen years of age, was killed by a pistol shot fired through one of the windows of the room in which she was sleeping, at about eleven o'clock at

.night, March 17, 1890. At that date, and for several years prior thereto, Anton Sokolovski, the father of the deceased, lived with his family, consisting of himself, his wife, one son, and his daughter Stasia, in a small one-story frame house on the south-west corner formed by the intersection of two highways in the outskirts of Braidwood, in said county of Will. Said house consisted of a main part fronting north on the east and west highway, and a small addition in the rear, used as a kitchen. The main part was divided into two rooms by a partition running east and west, the north or front room being used as a family sitting room, and the south or rear room as the sleeping room for the entire family. The east wall of the kitchen was some seven feet west of the east line of the main building, and close to the main building there was a door opening from the kitchen on to a landing, from which two steps led down into the yard. Just south of said door was also a window looking out into said yard. In the sleeping room were three windows, one on the east side, one on the west, and the third on the south side looking out on to said landing. In the room were two beds, one in the north-east and the other in the south-east corner, with their heads standing against the east wall, the east window being between them, the bed in the south-east corner of the room being close to or against the south window. The lot on which the house stood was enclosed by a fence, that on the east line having a gate opposite to the kitchen door opening out into the highway.

Until a few months prior to the homicide Anton Sokolovski and his son occupied the bed in the south-east corner of the room, but on the night of March 17, 1890, and for some. months prior thereto, that bed was occupied by his wife and daughter, the latter sleeping on the side next to the south window, while the father and son occupied the other bed, the father sleeping on the front side of the bed.

Sokolovski and his son were coal-miners, and both worked in the mines on the 17th day of March, 1890, returning home

about five o'clock in the afternoon, and neither seems to have left the house that evening until after the homicide. Between seven and eight o'clock in the evening the family retired, the daughter going to bed first, the father and son next, and the mother last. The mother upon retiring left a light burning on the kitchen table near the window on the east side of the kitchen, so as to throw more or less light out upon the landing in front of the kitchen door. At about eleven o'clock some person appeared at the south window of the bed-room and called out to Sokolovski to come out and he would shoot him, and immediately thereafter several shots were fired in rapid succession through the window, one of which struck the daughter and inflicted upon her a mortal wound, of which she died in a few minutes.

It is insisted that the evidence does not sufficiently identify the defendant as the person who fired said shots. Sokolovski, his wife and son all testify that they were able to identify the defendant by the sound of his voice, and Mrs. Sokolovski also claims that she saw and recognized his features as he was standing by the window. Their credibility in this respect is assailed in various ways, but as the conviction must be set aside on another ground and the case be again submitted to a jury, we forbear to discuss the questions of fact involved in this branch of the case.

It is also claimed that there is a fatal variance between the indictment and the evidence in respect to the name of the person alleged to have been murdered, her name being laid in the indictment as Stasia Sokolovski, while, as counsel for the defendant insist, the evidence shows that her real name was Stansilowa Sokolovski. Whether such variance actually exists is a question of fact which must be determined by another jury, and which for that reason we deem it unwise to discuss at this time.

The defendant and Anton Sokolovski were brothers-in-law, their wives being sisters, and the evidence tends to show that

for a long time an ill feeling had existed between them. At the trial the counsel for the defendant offered and sought to introduce evidence tending to show, among other things, that in the evening of March 16, 1890, the day prior to that on which the homicide was committed, Sokolovski, armed with a knife, visited various places in Braidwood in search of the defendant, with the avowed purpose and intention of killing him the instant he found him; that among other places he called at the defendant's house where the defendant was concealed and inquired for him; that after the defendant had left his house, Sokolovski called there again twice, and then and there declared his purpose to kill the defendant on sight; that later and during the evening, Sokolovski's daughter, the deceased, called upon the witness and asked him to help find her father who was somewhere concealed with a knife taken from his house for the purpose of killing the defendant; that on such request the witness went in search of Sokolovski and failed to find him, but afterwards found him at his own house, and that he then declared his said purpose in the presence of the witness and in the presence of his own family.

This evidence was first offered during the cross-examination of one of the witnesses for the prosecution, the jury having been previously directed to retire so as to enable counsel to make the offer and discuss the materiality of said evidence out of their presence. Defendant's counsel made the offer saying that he proposed to prove said facts by said witness then or at a subsequent stage of the trial, and so far as the record shows, the only objection to the evidence made and the only question in relation thereto considered by the court was as to its materiality. Subsequently the defendant's counsel, while examining a witness on behalf of the defense, put to him various questions manifestly intended to lead up to and elicit from such witness substantially the same facts. These questions being objected to by the state's attorney as immaterial were all excluded. Defendant's counsel then made an offer of

substantially the same nature, though less circumstantial and explicit than before.    This offer also was excluded.

While the exclusion of said evidence when first offered may be justified on the ground that the offer was not made at a proper stage of the trial, although that objection does not seem to have been suggested at the time, yet when the entire record is considered, we think the question of the materiality of said evidence is properly and sufficiently presented, so as to be subject to review.

If the only duty imposed upon the jury had been that of finding whether the defendant was guilty or not guilty in manner and form as charged in the indictment, the evidence offered would plainly have been immaterial.    The indictment charged him with the crime of murder, and no provocation, however great, offered so long before the commission of the homicide could be shown in justification or excuse, nor could it have had a tendency to reduce the grade of the offense from murder to manslaughter.    This clearly appears from the language of our statute defining manslaughter, and which in this respect is only declaratory of the common law.    It is there provided that before the offense can be accounted manslaughter, "the killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given, and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder."    Crim. Code, sec. 144.

At common law the punishment of murder in all cases was death, but by our statute the punishment may be death, or imprisonment for life, or for a term not less than fourteen years, and the duty is imposed upon the jury, where they find the accused guilty, of fixing his punishment by their verdict. Crim. Code, sec. 142.    While the statute recognizes no degrees in the crime of murder, yet, by providing for so wide a scale of punishment, it clearly recognizes the fact that the crime,

may be committed under circumstances manifesting different degrees of turpitude. The evident design of the statute is, that the punishment shall be proportioned to the turpitude of the offense, and it follows that evidence having a direct and legitimate bearing upon that question should be given to the jury, so as to enable them to fix the punishment understandingly and justly.

We had occasion to consider this question in *Fletcher* v. *The People*, 117 Ill. 184, and there said: "In the contemplation of this statute there may be every technical element of murder existing, and yet the circumstances be such that the jury would be justified in imposing punishment by confinement in the penitentiary for fourteen years only, and still other circumstances justifying them in imposing different degrees of punishment, up to that of death. It necessarily follows that in order to determine the degree of punishment to be imposed for this offense, evidence must be admissible which would not have been admissible, or, if admissible, could have availed nothing, at common law."

We are of the opinion that the evidence offered in this case had a legitimate bearing upon the question of the degree of turpitude of the offense of which the defendant stands convicted, and that he was entitled to have it submitted to and considered by the jury. If it be true that the defendant is the person who fired the shot which caused the death of Stasia Sokolovski, it is clear from the evidence that his intention was, not to kill her but to kill her father. If then so late as the day next previous to that on which the homicide was committed, Anton Sokolovski was in persistent pursuit of the defendant, armed with a deadly weapon, seeking to take his life, and after failing to find him, still threatening to kill him at sight, the act of the defendant in attempting to kill Sokolovski and killing his daughter may possibly have been regarded by the jury as manifesting a somewhat less degree of turpitude than that shown by the offense as proved, viz, an unprovoked

assassination.    We desire to express no opinion however as·
to the weight which should have been given to the evidence·
offered to the jury, or whether they ought, in view of it, to
have mitigated the defendant's punishment.    All we wish to·
say is, that it was evidence which the defendant had a right
to have the jury consider, and give to it such weight as, under
all the circumstances proved, they might deem it fairly and
justly entitled to.

Some portion of the evidence offered was mere hearsay, and·
that was properly excluded.    But the offer to prove the acts
and threats of Sokolovski should have been received, and its
rejection was error.

It is insisted that the conduct and threats of Sokolovski are·
not shown to have been communicated to the defendant prior
to the homicide, and that they could not therefore have influ-
enced his conduct and are consequently immaterial.    There·
is no direct proof that the defendant was told what Sokolovski
had been doing and saying the previous evening, but there is
evidence indirectly tending to show that he was informed of it..
The conduct of Sokolovski, according to the offer, was open
and notorious, and he visited the defendant's house once seek-
ing for him with hostile intent while the defendant was con-
cealed therein.    Besides this, it was proved by the prosecution
that in the afternoon of the following day, the defendant ap-
plied to a magistrate for a warrant for the arrest of Soko-
lovski for threatened violence against him, but was refused.
These circumstances render it extremely probable that the
defendant was fully aware of what Sokolovski had been doing
and saying at and before the time the homicide was committed.

For the error in refusing the evidence offered the judgment
will be reversed, and the cause will be remanded to the Circuit
Court of Will county for a new trial.

*Judgment reversed.*

MAGRUDER, C. J.:   I do not concur in the reversal.