No. 13,552.

FRADY *v.* THE PEOPLE.
(40 P. [2d] 606)

Decided December 17, 1934.

Mr. MILTON R. WELCH, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. CHARLES H. QUEARY, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as Frady, was tried for murder. The jury returned him guilty in the first degree and fixed the penalty at death. To review the judgment entered accordingly he prosecutes this writ. On our order he was permitted, as an indigent person, to file typewritten abstracts and briefs here, without costs.

The errors assigned, which require notice in this opinion, go to: (1) Remarks by the court during the opening statement of the district attorney; (2) exclusion of an offer of testimony; (3) exclusion of Frady's testimony concerning promises made to him by the district attorney; (4) refusal of the court to accept a plea of guilty

of murder in the second degree; (5) statements of court and counsel during closing arguments; (6) the correctness of the court's instruction No. 6; (7) the correctness of the court's instruction No. 8.

Frady and one Kelly were separately tried for the murder of Russell Browning who lived near Delta. On the morning of October 17, 1933, his home was discovered in flames and he was found nearby badly beaten, bound with barbed wire, and dying. The crime was indisputably fixed on Frady and Kelly as the outcome of a robbery. Kelly was first tried, found guilty, sentenced to death, and has been executed. There is no contention that Frady was not also guilty. Each man testified herein and charged the actual killing to the other. Frady's principal contentions here are, first, that he should have been permitted to plead guilty to second degree murder; second, that the extreme penalty imposed was the result of the other errors assigned.

█ 1. In opening, the district attorney stated that Frady had been of service to the state in solving the crime and that in return he had promised to recommend to the court an acceptance of a plea of guilty to second degree murder; that he had so recommended, but the judge had insisted that the matter be left to a jury; that the state was not asking the death penalty; and that the jury should consider these things. Whereupon the court said: "* * * No one can promise anybody accused of a crime what punishment shall be inflicted. In capital cases it rests with the jury, * * * and for that reason the court would not accept the plea; * * *. You understand that, do you, gentlemen?" In support of this assignment no authority is cited and we know of none such. The law is as stated. *Fleagle v. People,* 87 Colo. 532, 289 Pac. 1078. The effect of the very frank and fair admission of counsel for the people, plus the reply of the court, would seem beneficial rather than prejudicial to defendant.

█ 2. Counsel for defendant offered to prove that

Kelly told one Welty, not in the presence or hearing of Frady, that Browning had a lot of money and would be easy to rob. The evidence was wholly immaterial and incompetent. No authority is cited in support of its admission.

3. Objections were sustained to questions propounded to Frady concerning the promises made to him. No confession or statements made by him, if any, as a result thereof, were offered in evidence. The promises made by the district attorney were admitted and unquestioned. The only authority cited in support of this assignment is 16 C. J., p. 723, §1481. It relates solely to instances ''where a confession is introduced by the state.'' The rule is well settled, but there was no such evidence here. The proffered testimony was properly excluded.

4. Frady had been called by the people as a witness against Kelly. In view of that fact, and the promise made by the district attorney, it is contended that the trial court abused its discretion in not accepting the tendered plea. The discretion being admitted we fail to find the abuse. The only applicable authorities cited are federal cases, the principal one being *United States v. Ford*, 99 U. S. 594, 606, 25 L. Ed. 399. Each of these cases, however, deals with an accomplice. Here both Kelly and Frady were principals and each insists that the other was the actual perpetrator. If Kelly was correct in this it would be absurd to permit Frady, by his testimony, to send him to death that he himself might escape with a minor sentence. Under such circumstances it was no abuse of discretion to send the question to a jury. It is clear that these jurors believed Frady at least equally guilty with his associate, if he did not himself inflict the fatal blows, or some of them. There is much evidence to support that conclusion. For instance, Frady's explanation of how he happened to be splattered with his victim's blood is weak and unconvincing. But even in the federal courts similar promises are accepted only as

grounds for continuance to give time to seek executive clemency. In the Ford case, supra, it is held that the promises of the prosecutor can not bind the court. A brief but sufficient history of the principle involved in this phase of the case will be found in the opinion of Chief Justice Beasley, speaking for the court of error and appeals of New Jersey, in a case in many respects similar to that now before us and in which the modern rule is well stated. *State v. Graham,* 41 N. J. L. 15, 32 Am. Rep. 174. It will be observed that whether the alleged agreement be one not to prosecute or for reduction of the offense or diminution of the punishment, the pertinent history and applicable principles are the same. They may again be found briefly stated in 8 R. C. L. page 125, section 101, from which we quote: "But the witness must keep his part of the contract strictly if he hopes to receive the promised immunity, and if his testimony is corrupt, or his disclosure is only partial, he gains nothing, but forfeits his right under the contract." We think, under the facts of the instant case, the district attorney's duty obliged him to prosecute, that he fully carried out the promise he made, that the jurors were fairly advised of the facts, and that no abuse of discretion appears.

 5. During the closing argument of counsel for defendant, which was not taken by the reporter and appears briefly in the record by stipulation, indefinite statements were made which might well be interpreted as contrary to instructions given. It is clear the trial judge so understood them, for he interrupted, saying: "I think your argument is contrary to the instructions of the court to the jury. By the instructions given the jury I have in effect told them that if they find and believe from the evidence that the defendant participated with Kelly in the robbery or attempted robbery of Browning in the course of which Browning was killed the defendant would be a principal whether he did the actual killing or not." Error is assigned thereon. We find none. The

court's statement was but a recitation of instructions given and was justified by the argument which prompted it. Moreover, the jury was especially instructed that "the remarks of court and counsel are not evidence."

Counsel for the people, in his closing argument, said: "While we are not asking at your hands the death penalty in this case, you are aware from the reading of our daily press that life sentences are often not sentences for life and that frequently one sentenced for life is at liberty in a few years." Objection was made thereto and error is assigned thereon. It does not appear that any ruling of the court was asked or given and there was no request for a direction to disregard the statement. It was a statement of fact, known to all men, doubtless present in the minds of the jurors without being mentioned, and most likely to creep into argument under the circumstances. Probably technically improper it was still within the court's discretion. *Hillen v. People,* 59 Colo. 280, 284, 149 Pac. 250. The instruction concerning remarks of counsel applied to this and we doubt its influence on the jury. *Wechter v. People,* 53 Colo. 89, 96, 124 Pac. 183.

6. By instruction No. 6 the jurors were told that if this was a homicide committed in the perpetration of robbery "then the elements of malice, deliberation, premeditation and intent are not necessary elements of the crime charged and need not be proved." Our statutes provide that "all murder * * * which is committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed murder of the first degree." C. L. §6665. It is the attempt to rob, not the elements of malice, deliberation, etc., which lifts such a homicide into the classification of first degree murder. "The purpose of the statute was to make every homicide committed in the perpetration or attempt to perpetrate certain felonies murder, which may be punished by death, if the jury so determine, without regard to malice, deliberation or premeditation. When, therefore, the proof was undisputed that the homicide was committed in an

attempt to perpetrate a robbery which the defendants had conspired to commit, it was not necessary to prove any facts from which malice, deliberation or premeditation could be inferred.'' *Andrews v. People,* 33 Colo. 193, 201, 79 Pac. 1031. The instruction was correct.

7. Instruction No. 8 states the facts under which an accessory is held as principal. C. L. 1921, p. 1726, §6645. Counsel for defendant asked that there be added to that instruction the following: ''If you find that the defendant Frady objected to and protested against the killing of said Russell Browning, before that act had been accomplished you may take that into consideration in determining the degree of the offense.'' The court's refusal to so amend the instruction is assigned as error. The amendment is open to several objections. First, it had no relation to the general subject of instruction No. 8. Second, it selects and comments upon a single piece of evidence contrary to the general rule; and third, the jury was instructed to consider all the evidence in reaching its conclusion. We think the ruling was correct.

Below, as here, Frady made a showing of indigence, and counsel, appointed to represent him, is deserving of commendation for the manner in which he has discharged an unpleasant, and necessarily uncompensated, duty to his profession and society. A hasty glance at the highlights of this record leaves the impression of a very severe verdict, possibly due to passion, prejudice, or error, or a failure to properly and vigorously defend. A careful examination of it however dispels doubt and brings the conviction that Frady was ably represented and that the jurors were justified in concluding, not only that this was first degree murder because perpetrated in the prosecution of a deliberately planned robbery, but that it was a cold-blooded, intentional, wanton, and particularly atrocious crime in which Kelly and Frady equally participated. Add to this that Frady had served two terms in the reform school and one, on a plea of guilty of burglary and larceny, in the

penitentiary, from which he had but recently been released, and there remains no mystery about the verdict and little room to question its justice.

The judgment is affirmed and the week ending March 9, 1935, is fixed as the date for the execution of the sentence.

MR. JUSTICE BOUCK dissents.

MR. JUSTICE BUTLER, concurring.

In instructing a jury that murder committed in the perpetration of, or in an attempt to perpetrate, robbery is murder of the first degree, the court, for the guidance of the jury, should define robbery. That was not done in this case. There was no request that it be done.

Instruction No. 11 stated that the defendant's drunkenness might be considered by the jury only upon the question whether the plan, if any, to rob was deliberate or premeditated. It seems clear that the jury also had the right to consider the defendant's condition as to drunkenness or sobriety in determining whether they should fix the penalty at death or at life imprisonment.

Instruction No. 9 informed the jury that they were not concerned with the guilt or innocence of Kelly. But as Kelly testified, the jury were entitled to consider the fact that he had been convicted of murder, as bearing upon the question of his credibility as a witness. C. L. §6555.

The foregoing matters were not called to the attention of the trial court, by objection or otherwise; and in view of all the circumstances disclosed by the record, I think that the substantial rights of the defendant on the merits were not prejudiced thereby, and therefore that a reversal of the judgment is not required. C. L. §§7068, 7103.

Under the district attorney's promise to recommend that he be permitted to plead guilty to a charge of second degree murder, the defendant testified as a witness for the people at the Kelly trial. It was largely through

the defendant's disclosures that the mystery of the killing of Browning was solved and Kelly convicted. In 1 R. C. L. p. 174, it is said: "The modern English practice described in the preceding paragraph has been approximately followed very generally by the American courts, and it would seem to be the generally accepted view that if an accomplice is convicted after having been made a witness by the state, and received as such by the court, and after having made an ingenuous confession, he has an equitable claim to a judicial recommendation to the mercy of the pardoning power, which cannot be withheld without a violation of an established rule of practice, and there would seem to be no case in which such recommendation has not in some measure prevailed."

I concur in the affirmance of the judgment. I feel, however—and Justices Bouck and Holland share this view with me—that this court should recommend to the Governor the commutation of the sentence to life imprisonment, and that the defendant should be kept in the penitentiary for the rest of his life.

Mr. Justice Bouck, dissenting.

By section 6665, Compiled Laws, 1921, the jury is empowered to impose either the death penalty or life imprisonment upon a defendant whom it finds guilty of murder in the first degree. The judgment here involves a sentence of death so passed upon the defendant.

The law of the land, as established by an overwhelming line of authorities, calls in the present case for lowering the defendant's punishment to life imprisonment as a matter of right. This is true wholly apart from any question of whether the lower court committed prejudicial error or not, and simply because an accomplice becomes entitled to at least partial immunity when he "turns state's evidence," provided he testifies fully and fairly at the trial of his associate in the crime. Here the defendant did this, and did it effectually. The associate was

convicted, sentenced to death, and executed. Of course there cannot be even partial immunity from punishment for first degree murder unless a reduction is made to life imprisonment or less.

At the outset I want to make one thing clear: I am not contending that this right to at least partial immunity can be pleaded in bar of the prosecution, as a purely legal defense. That proposition is not involved herein. I have found no authorities, however, which question the principle I have stated, or which would justify or excuse the bare, unqualified affirmance by this court of the extreme penalty imposed by the trial court upon the accomplice defendant in this case without any recommendation of at least partial immunity and without any judicial substitute therefor.

"The universal usage is that such a party, if called and examined by the state on the trial of his associates in guilt, will not be prosecuted for the same offense, provided it appears that he acted in good faith and that he testified fully and fairly." *United States v. Ford*, 99 U. S. 594, 595. "* * * The admission of the party as a witness amounts to a promise *by the court* of a recommendation to mercy upon condition of his making a full and fair disclosure of all the circumstances of the crime." *The People v. Whipple*, 9 Cowen (N. Y. 707, 712). "* * * Such accomplice has an equitable claim to a judicial recommendation to the mercy of the pardoning power, which cannot be withheld without a violation of an established rule of practice." *State v. Graham*, 41 N. J. Law 15, 21. The court added: "Such a recommendation has been, without known exception, hitherto effective in obtaining some remission of punishment." In New Jersey [and in many other states, including Colorado] "it has been the prevailing mode either to let the indictment drop, or for the court, with the assent of the prisoner, so to adjust its sentence as to supersede the necessity of a recommendation for a remission of the sentence of the law." Id., at page 19-20. "If his testimony was procured by an

express promise of immunity, or during interviews with the prosecuting attorney [as in the case at bar], principles of justice would demand, and the prevalent practice would sanction, the judicial recommendation of his case to the executive that his pardon may be obtained." Underhill, Criminal Evidence (3d Ed.), 155, §128. "* * * Whether in all cases [an accomplice] shall be permitted to become a witness, and thus earn an exemption from punishment which is the implied condition of his turning informer, and declaring the whole truth, is in the discretion of the court and the prosecuting officer." *Linsday v. People,* 63 N. Y. 143, 153. "Being called as a witness, there is an implied obligation by the government, if not expressed, that if the witness shall make a full and honest disclosure of the facts * * * he shall not be prosecuted." *United States v. Lee,* 4 McLean 103, 26 Fed. Cas. No. 15,588. "It is sufficient if the witness testifies to such facts as are within his knowledge and refuses no material and admissible information which he possesses, whether the evidence be favorable or adverse to the state, to entitle him to the recommendation to executive clemency * * *." *State v. Lyon,* 81 N. C. 600, 604. "* * * The court can do no more than to forbear and give opportunity to the prisoner to make application to [the governor] with a recommendation for * * * favorable exercise [of the pardoning power]." Id., at page 602. "The difficulty of giving specific effect to the usage from a want of power in the executive (as in this state) to pardon until after trial and conviction may be removed by the exercise of the right vested in the solicitor, when the case calls for it, to enter a nolle prosequi and allow the prisoner's discharge, which practically accomplishes the same ends as the pardon." Id., at page 603. And in Colorado, as in many other states, the most common and effective remedy has been found to be the acceptance of a plea of guilty on a lower charge. *State v. Graham, supra.* "Enough appears in [*People v. Whipple, supra*] to show that it was objected

on behalf of the accomplice that the usage gave him no assurance of a pardon, inasmuch as the power of pardon was vested in the governor, and the authority of the court extended no further than the recommendation for mercy; to which the court responded, that the legal presumption was that the public faith will be preserved inviolate, and that the equitable claim of the party will be ratified and allowed. Public policy and the great ends of justice, it was said in [*U. S. v. Lee, supra*], require that the arrangement between the public prosecutor and the accomplice should be carried out; and the court proceeded to remark that if the district attorney failed to enter a *nolle prosequi* * * * 'the court will continue the cause until an application can be made for a pardon,' which of itself is a complete recognition of the usage and practice established in the place of the ancient proceedings of approvement." *U. S. v. Ford*, 99 U. S. 594, 605. "In present practice [in England], where accomplices make a full and fair confession of the whole truth, and are in consequence admitted to give evidence for the Crown, if they afterwards give their testimony fairly and openly, although they are not of right entitled to pardon, the usage, lenity, and practice of the court is to stay the prosecution against them; and they have an equitable title to a recommendation to the king's leniency." Starkie on Evidence (7th American from 3d London Edition), volume 2, part 1, page 11, citing the leading English case of *R. v. Rudd*, Cowper 339. See also Roscoe, Crim. Ev. (14th Ed.), pages 145-6. "In the United States, it would seem that, if the prisoner makes full disclosure, immunity is substantially pledged him; the government is under implied, if not express, obligation not to prosecute." 2 Cooley's Blackstone (3d Ed., which was the last edition prepared by Judge Cooley himself), Book IV, *331, note 6. In England (where the procedure apparently has always lacked the elasticity which in this country by express or tacit agreement permits the lessening of the maximum sentence by substituting a lower charge) the court in the

year 1796 announced to a criminal defendant: "We cannot compel you to answer contrary to your inclination: neither can we absolutely give you any legal indemnity against the consequences of your testimony. But we may and do assure you that if you tell the truth, the whole truth, and nothing but the truth, you will have that claim on the favour of the Crown which the honourable ingenuousness of witnesses never fails to obtain; and you may rely on it that such conduct will powerfully recommend you to his Majesty for that protection and mercy which are invariably extended to accomplices, and guard you from any future consequences of your evidence; but whether you think it safe for you to depend on this assurance it is for you to determine." *R. v. England,* 2 Leach 767, 770. That, as I understand, is the method in England today. Such teamwork is not possible under our American system of government, and our courts would therefore seem to have the greater responsibility to apply the recognized state's evidence principle not only in letter but in spirit as well. Compare: *The People v. Whipple,* 9 Cowen 707, 716.

By ignoring the principle contended for, and by preventing it from being used in this defendant's behalf, the trial court has violated the defendant's fundamental right.

The trial judge defeated every attempt to give this unquestioned principle a practical application. He obviously made the mistake of not realizing that it exists as a vital part of modern criminal jurisprudence in this country, and was intended to bring into play important reserve powers and duties of a trial judge, not in the interest of a weak or maudlin sentimentality, but as an indispensable aid to the enforcement of criminal law. Starting out as he did with the correct premise that under our statute the power of fixing the punishment for a first-degree murder lies wholly with the jury, the judge below dropped into the illogical position that therefore he must exclude any evidence or instruction that

would assist the jury in enforcing the immunity principle by considering it in mitigation, and by making an enlightened choice of penalty rather than an arbitrary one. The fallacy is self-evident when we consider that a jury convicting of first-degree murder is acting in a dual capacity. First it decides the question of guilt or innocence; secondly, it decides what punishment shall be suffered.

In the case at bar the district attorney solved an apparently unsolvable crime mystery by drawing the facts from the defendant Frady with a promise that he would recommend acceptance of a guilty plea to second-degree murder, the penalty for which at the judge's discretion ranges upward from ten years' imprisonment and may be for life; but the trial judge, misconceiving his right and power, refused to accept the plea. The judge's misconception in this regard—both in disclaiming his ability to cooperate with the district attorney by accepting the lower plea, and in excluding the mitigation issue as above described—should, I think, be deemed reversible error unless the state's evidence principle is properly enforced in some such orderly way as is suggested by the authorities herein cited.

The evidence of matters in mitigation must reach the jury—if at all—before the verdict of guilty is rendered, for the jury's sentence comes at the very moment of conviction. By ruling out the matters of mitigation at the trial, the judge deprived the jury of the power to make an intelligent and discriminating choice. The final act of the jury in this connection is not to be a mere unreasoning guess.

Where a jury is charged with the duty of imposing the sentence, evidence in mitigation is admissible. 1 McClain on Crim. Law, page 340, §363.. "At common law the punishment of murder in all cases was death, but by our statute the punishment may be death, or imprisonment * * * and the duty is imposed upon the jury, where they find the accused guilty, of fixing his punishment by

their verdict. \* \* \* By providing for so wide a scale of punishment, [the statute] clearly recognizes the fact that the crime may be committed under circumstances manifesting different degrees of turpitude. The evident design of the statute is, that the punishment shall be proportioned to the turpitude of the offense, and it follows that evidence having a direct and legitimate bearing upon that question should be given to the jury, so as to enable them to fix the punishment understandingly and justly.'' *Nowacryk v. The People,* 139 Ill. 336, 342, 28 N. E. 961, citing *Fletcher v. The People,* 117 Ill. 184, 7 N. E. 80. In the latter case the court said (page 188): ''There may be every technical element of murder existing, and yet the circumstances be such that the jury would be justified in imposing punishment by confinement in the penitentiary for fourteen years only, and still other circumstances justifying them in imposing different degrees of punishment, up to that of death. \* \* \* [page 189]. To determine the degree of punishment to be imposed for this offense, evidence must be admissible which would not have been admissible, or if admitted, could have availed nothing, at common law.'' The court here should have admitted all evidence bearing on mitigation, and given appropriate instructions, in order that the jury might properly determine as between the death penalty and life imprisonment. See also *Howell v. The State,* 102 Ohio St. 411, 131 N. E. 706.

The majority opinion undertakes to deny Frady's claim to even partial immunity by declaring that Frady was a principal and not an accomplice. But the term ''accomplice'' applies to ''all who are concerned in the crime, whether as principals in the first or second degree, or as accessories.'' 16 C. J. 670, §1344. See: *Cross v. People,* 47 Ill. 152. The question whether the one turning state's evidence is a principal or is more or less guilty than he against whom he testifies is immaterial. *Linsday v. People,* 61 N. Y. 143, 153.

Again, the majority opinion herein erroneously says:

"But even in the federal courts similar promises are accepted only as grounds for continuance to give time to seek executive clemency. In the Ford case, supra, it is held that the promises of the prosecutor cannot bind the court." This statement is inaccurate in several particulars: (1) It ignores the fact that the promise we are concerned with here is not some specific promise of the district attorney (that might become relevant if an alleged confession were offered in evidence, which is not the case). The promise involved here is the immunity promise which is universally held to be implied when an accomplice is called to, and in good faith does, testify for the prosecution at the trial of his associate. The promises in the Ford case, on the other hand, were specific promises that certain federal assessments would be recalled, and that no new proceedings would be commenced on account of past transactions; and the defendant attempted to plead these promises in bar. Even in the case of the implied promise of immunity a plea in bar is conceded to be improper. It is manifest that to admit such a plea in bar would impose the necessity of granting full immunity, and would shut out the more just and more efficient remedy of such partial immunity or leniency as the particular facts may suggest. The point, of course, is not involved in the present case, where no plea in bar was presented. (2) The promise of immunity is not accepted by the federal courts merely as a ground for continuance to give time to seek executive clemency. Those courts, both the United States Supreme Court and the inferior federal courts, affirmatively hold that the accomplice has an equitable right to a judicial recommendation for executive clemency. *United States v. Ford, supra,* at page 602. But they go farther. "If the district attorney shall fail to enter a *nolle prosequi* on the indictment against Lee, the court will continue the cause until an application can be made for a pardon. The court would suggest that to discontinue the prosecution is the shorter and better mode." *United States v. Lee,*

*supra.* Where the accomplice testifies in good faith, "he is equitably entitled to a pardon, and the prosecutor, and the court if need be, when fully informed of the facts, will join in such a recommendation. Modifications of the practice doubtless exist in jurisdictions [to which Colorado belongs] where the power of pardon does not exist prior to conviction; but every embarrassment of that sort may be removed by the prosecutor, as in the absence of any legislative prohibition he may *nol. pros.* the indictment if pending, or advise the prisoner to plead guilty, he, the prisoner, reserving the right to retract his plea and plead over to the merits if his application for pardon shall be unsuccessful. 1 Bish. Cr. Proc. (2d Ed.), §1076, and n." *United States v. Ford, supra,* at page 604.

The majority opinion further says that *State v. Graham,* 41 N. J. L. 15, which I have cited above, is "in many respects similar" to the case at bar. Far from it. After the execution of the confederate against whom Graham had testified, the attorney general as the prosecuting officer requested the court's advice as to whether a *nolle prosequi* should be entered [that is, total immunity granted], or what other course should be pursued. The New Jersey court, while properly advising against a summary dismissal [which would have amounted to improperly allowing a plea in bar], discussed the whole subject at length. Because of the interpretation placed upon the discussion by the majority, I quote the formal conclusions of the court in full as follows:

"First. That if an accomplice be convicted after having been made a witness by the state, and received as such by the court, and after having made an ingenuous confession, that such accomplice has an equitable claim to a judicial recommendation to the mercy of the pardoning power, which cannot be withheld without a violation of an established rule of practice.

"Second. Such a recommendation has been, without any known exception, hitherto effective in obtaining some **remission of punishment.**

"Third. That instead of the foregoing course, it is competent for the court to order the accomplice to be acquitted at the trial, for the purpose of qualifying him as a witness for the state, or to accept from the defendant a plea admitting guilt to such a degree as, in the opinion of the court, is requisite, or for the court to assent to the entering of a *nolle prosequi* by the attorney-general."

The majority opinion also quotes a passage from 8 R. C. L., page 125, §101. It surely cannot be intended to imply a determination by the majority that Frady forfeited his right to even partial immunity.

In the very nature of things the court's preliminary decision whether or not the witness is so guilty himself as to disentitle him to any and all leniency must be and is made before he is admitted as a witness. See: *People v. Whipple*, 9 Cowen, 707; 1 Greenleaf on Evidence (16th Ed.), page 519, §379; also the cases cited elsewhere herein.

Moreover, in the preliminary remarks made just before his deputy gave the customary opening statement for the people, the district attorney himself said:

"Gentlemen of the Jury, * * * I wish to say that for nearly four weeks after the murder of Mr. Browning the whole matter of the cause of his death was then still a mystery to the Sheriff and the District Attorney. That we were convinced that this defendant could give us information which would lead to the solution of the murder. Being unable to get this defendant to tell us anything, we concluded that we would promise this defendant that if he would tell us the truth about the case, including the names of the participants in this crime, we would recommend to the court that he be allowed to plead guilty to a charge of second degree murder, in which case of course the court would fix the penalty. Shortly thereafter this defendant gave us facts by which the people were able to solve the mystery.

"Subsequent thereto we took the matter up with the court relative to the allowing of this defendant to plead guilty to second degree murder, and it was the court's

opinion that this was a matter for the jury and he therefore refused to accept such a plea.

"The people are not asking for the death penalty as the penalty is a matter left entirely in your hands by statute * * *. In considering the whole evidence in this case we feel that you should bear in mind that this defendant was of assistance to the prosecution and that this should be considered along with all the other circumstances in the case."

The judge immediately nullified the district attorney's statement by interposing thus:

"I will say this to the jury in connection with Mr. Haywood's statement, that no one can promise anybody accused of crime what punishment shall be inflicted. In capital cases it rests with the jury, and in all other cases it rests with the court. And for that reason the court would not accept the plea; and put it up to the jury. You understand that, do you, gentlemen?"

The implication that the jurors would be expected to find Frady guilty of first-degree murder and thus become the authority to impose the punishment is unmistakable. Nor did the trial judge thereby give Frady the benefit of matters in mitigation.

The case of *Fleagle v. People,* 87 Colo. 532, 289 Pac. 1078, is earnestly relied upon by the people. It is not in point. Fleagle had not testified against his confederates. He relied wholly upon an alleged special promise of the district attorney, made to induce his confession. This fact takes him out of the class dealt with by the immunity practice above referred to. Confessions are to be dealt with on wholly different principles, and involve the question whether the confession is voluntary or is brought about by promises or threats. Only the actual giving of testimony brings the accomplice within the protection of the particular immunity rule for which I contend; and then, as we have seen above, it requires no express promise, but the law implies the promise.

Thus far I have not mentioned the most serious conse-

quence of an affirmance herein. If this affirmance means the incidental repudiation of the universally approved immunity principle, with its power of uncovering crime by an express or implied promise of the court to dismiss or adjust punishment thereunder as to one who is thereby induced to turn state's evidence, then it also means the weakening, if not the paralysis, of efficiency in every prosecuting attorney, every police officer and every other peace officer in the state. A sound discretion of the trial judge could easily guard against abuse. That power of regulating criminal procedure has hitherto been a strong weapon in the fight against crime. We cannot well afford to throw it away.

In view of the decision of the court I suggest that it cannot well do less than itself recommend this youth of 24 years to the executive department for commutation of the death penalty. I hereby, on my individual responsibility, make such recommendation.